**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA RECEIVED
SOUTHERN DIVISION**

2015 JUL 27 A 11: 48

| | | |
|---|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, | : | |
| | : | DEBRA P. HACKETT, CLK CIVIL ACTION NO.: DISTRICT COURT |
| Plaintiff, | : | 1:15-CV-538-MHT-TFM |
| v. | : | **FILED UNDER SEAL** |
| | : | |
| DINAR, CORP., INC.; MY MONEX, INC., a Nevada Corporation; and HUSAM TAYEH | : | |
| | : | |
| Defendants, | : | |
| | : | |
| THEODORE S. HUDSON, II; and MY MONEX, INC., an Alabama Corporation | : | |
| | : | |
| Relief Defendants | : | |

**COMPLAINT FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF**

Plaintiff, United States Commodity Futures Trading Commission ("Commission"), by its attorneys, alleges as follows:

## I. SUMMARY

1. Beginning from at least January 2012 and continuing to the present (the "relevant period"), Husam Tayeh ("Tayeh"), Dinar Corp., Inc. ("DCI") and My Monex, Inc., a Nevada corporation ("Monex NV") (collectively, the "Defendants"), engaged, and are engaging, in a fraudulent scheme involving the offering of agreements, contracts or transactions in off-exchange foreign currency ("forex") on a leveraged, margined, or financed basis to retail customers who were not eligible contract participants ("ECPs") and that do not result in actual delivery of forex within two (2) days of the transaction date(s). Defendants, who have never been registered as required with the Commission, have engaged in more than $8 million of these illegal, off-exchange retail forex transactions.

2. Tayeh created and operates DCI and Monex NV, business entities that he uses to facilitate the Defendants' fraudulent activities and that act as the counterparty(s) in the subject agreements, contracts or transactions in forex. Defendants operate their fraudulent scheme via the Internet through the use of the website *www.dinarcorp.com* ("website"), by offering, and entering into, transactions in forex with non-ECP retail customers that are leveraged, margined or financed by the Defendants, and that result in actual delivery of forex – if at all - within periods of not less than fifteen (15) days and as much as one hundred twenty (120) days following the date of the transaction(s).

3.    In furtherance of the fraudulent scheme, Tayeh, individually and on behalf of DCI and Monex NV, made, and continues to make, material misrepresentations and omit material facts in solicitations to actual and prospective customers via the website, including but not limited to: (a) representing that DCI operates a "fully licensed and fully compliant licensed money services business" but failing to disclose that DCI has been served with cease and desist orders in the states of Texas and Illinois for operating without required licenses; (b) representing that DCI and Monex NV provide the "best price guaranteed" and the "best prices up front all the time" but failing to disclose that the forex transactions they offer to retail customers include significant finance charges; (c) failing to disclose that DCI and Monex NV are each operating as a registered foreign exchange dealer ("RFED") without being registered with the Commission as required; and (d) failing to disclose that Tayeh is acting as an associated person ("AP") of an RFED(s) without being registered with the Commission as required.

4.    By virtue of this conduct and the further conduct described herein, the Defendants have engaged, are engaging, or are about to engage in acts and practices in violation of Section 4b(a)(2)(A) and (C) of the Commodity Exchange Act (the "Act"), as amended, 7 U.S.C.

§ 6b(a)(2)(A), (C) (2012) and Commission Regulation ("Regulation") 5.2(b)(1) and (3), 17

C.F.R. § 5.2(b)(1), (3) (2014); DCI and Monex NV have engaged, are engaging, or are about to

engage in acts and practices in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended,

7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012), and Regulation 5.3(a)(6)(i), 17 C.F.R.

§ 5.3(a)(6)(i) (2014); and, Tayeh has engaged, is engaging, or is about to engage in acts and

practices in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, 7 U.S.C.

§ 2(c)(2)(C)(iii)(I)(aa) (2012), and Regulation 5.3(a)(6)(ii), 17 C.F.R. § 5.3(a)(6)(ii) (2014).

5.    Accordingly, pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1

(2012), and Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2012), the Commission brings

this action to enjoin Defendants' unlawful acts and practices, to compel their compliance with

the Act and the Regulations promulgated thereunder, and to enjoin them from engaging in any

commodity related activity.

6.    Unless restrained and enjoined by this Court, there is a reasonable likelihood that

Defendants will continue to engage in the acts and practices alleged in this Complaint, and

similar acts and practices, as more fully described below.

## II.    JURISDICTION AND VENUE

7.    The Court has jurisdiction over this action pursuant to Section 6c of the Act, as

amended, 7 U.S.C. § 13a-1 (2012), which authorizes the Commission to bring an action in proper

district courts of the United States in order to seek injunctive and other relief against any person

whenever it shall appear to the Commission that such person has engaged, is engaging, or is

about to engage in any act or practice constituting a violation of any provision of the Act or any

rule, regulation or order thereunder.

8. The Commission has jurisdiction over the conduct and transactions at issue in this case pursuant to Sections 2(c)(2)(C) and 6c of the Act, as amended, 7 U.S.C. §§ 2(c)(2)(C) and 13a-1 (2012).

9. Venue properly lies with the Court pursuant to Section 6c(e) of the Act, as amended, 7 U.S.C. § 13a-1(e) (2012), because Defendants transact business in this District and certain transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, and/or are about to occur within this District.

### III.   **THE PARTIES**

10. Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1 *et seq.* (2012), and the Regulations thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2014).

11. Defendant **Dinar Corp., Inc.** is a business corporation organized and operated pursuant to the laws of the State of Nevada. DCI's President and sole shareholder is Tayeh. DCI has never been registered with the Commission in any capacity. DCI is neither a financial institution, registered broker dealer, insurance company, financial holding company, or investment banking holding company, nor an AP of any such entity.

12. Defendant **Husam Tayeh**, is the President and sole shareholder of DCI and Monex NV. Tayeh is a resident of Burbank, Illinois. Tayeh has never been registered with the Commission in any capacity. Tayeh is neither a financial institution, registered broker dealer, insurance company, financial holding company, or investment banking holding company, nor an AP of any such entity.

13. Defendant **My Monex, Inc., a Nevada corporation,** is a business corporation organized and operated pursuant to the laws of the State of Nevada. Monex NV's President and

sole shareholder is Tayeh. Monex NV has never been registered with the Commission in any capacity. Monex NV is neither a financial institution, registered broker dealer, insurance company, financial holding company, or investment banking holding company, nor an AP of any such entity.

## IV.   RELIEF DEFENDANTS

14.   Relief Defendant **Theodore S. Hudson, II ("Hudson"),** is a resident of Dothan, Alabama. Hudson is the President of Monex AL and a shareholder of Monex AL. Hudson has never been registered with the Commission in any capacity. Hudson is neither a financial institution, registered broker dealer, insurance company, financial holding company, or investment banking holding company, nor an AP of any such entity.

15.   Relief Defendant **My Monex, Inc., an Alabama corporation ("Monex AL"),** is a business corporation organized and operated pursuant to the laws of the State of Alabama. Monex AL's President and organizer is Hudson, and it is operated out of Hudson's residence in Dothan, Alabama. Monex AL has never been registered with the Commission in any capacity. Monex AL is neither a financial institution, registered broker dealer, insurance company, financial holding company, or investment banking holding company, nor an AP of any such entity.

## V.   STATUTORY BACKGROUND

### A.   Statutory and Regulatory Requirements Related to Forex Fraud

16.   Section 2(c)(2)(C)(i)(I) of the Act, 7 U.S.C. § 2(c)(2)(C)(i)(I) (2012), applies to any agreement, contract or transaction in forex that is offered to, or entered in to with, a person that is not an ECP, subject to certain exceptions not applicable herein. The agreement, contract or transaction in forex must be offered or entered into on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or

counterparty on a similar basis. *Id.* Section 2(c)(2)(C)(I) shall not apply to a security that is not a security futures product, or a contract of sale that results in actual delivery within two (2) days of the transaction, or that creates an enforceable obligation to deliver between a seller and buyer that have the ability to deliver and accept delivery, respectively, in connection with their line of business. *Id.*

17.     Section 2(c)(2)(C)(ii)(I) of the Act, 7 U.S.C. § 2(c)(2)(C)(ii)(I) (2012), states in relevant part that Section 4b of the Act, 7 U.S.C. § 6b (2012), applies to agreements, contracts or transactions in forex described in Section 2(c)(2)(C)(i)(I) of the Act, 7 U.S.C. § 2(c)(2)(C)(i)(I) (2012).

18.     Section 2(c)(2)(C)(iv) of the Act, 7 U.S.C. § 2(c)(2)(C)(iv) (2012), further provides that Section 4b of the Act, 7 U.S.C. § 6b (2012), shall apply to any agreement, contract or transaction in forex "as if the agreement, contract, or transaction were a contract of sale of a commodity for future delivery."

**B.     Statutory and Regulatory Requirements Related to Forex RFEDs and APs**

19.     An "eligible contract participant" is defined by the Act, in relevant part, as an individual with total assets in excess of (i) $10 million, or (ii) $5 million and who enters the transaction "to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual." Section 1a(18) of the Act, as amended, 7 U.S.C. § 1a(18) (2012).

20.     Pursuant to Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012), an entity must be registered if it solicits or accepts orders from any person that is not an ECP in connection with agreements, contracts or transactions described in Section 2(c)(2)(C)(i) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(i) (2012), entered into

with a person who is not described in Section 2(c)(2)(B)(i)(II)(aa), (bb) (ee) or (ff) of the Act, as amended, 7 U.S.C. § 2(c)(2)(B)(i)(II)(aa), (bb), (ee) or (ff) (2012).

21.     For the purposes of trading retail forex, a "retail foreign exchange dealer" is defined in Regulation 5.1(h)(1), 17 C.F.R. § 5.1(h)(1) (2014), as any person that is, or offers to be, the counterparty to a retail forex transaction, except for certain persons not relevant to this Complaint.

22.     For purposes of trading forex, an "associated person" of a retail foreign exchange dealer is defined in Regulation 5.1(h)(2), 17 C.F.R. § 5.1(h)(2) (2014), as any natural person associated with an RFED as a partner, officer or employee (or any natural person occupying a similar status or performing similar functions), in any capacity which involves: (i) the solicitation or acceptance of retail forex customers' orders (other than in a clerical capacity); or (ii) the supervision of any person or persons so engaged.

23.     Pursuant to Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2014), in connection with retail forex transactions, all RFEDs must be registered with the Commission. Pursuant to Regulation 5.3(a)(6)(ii), 17 C.F.R. § 5.3(a)(6)(ii) (2014), in connection with retail forex transactions, all APs of an RFED must be registered with the Commission. The registration requirements of Regulation 5.3(a)(6)(i) and (ii) became effective October 18, 2010, prior to the relevant period identified herein.

24.     A "retail forex transaction" is defined in Regulation 5.1(m), 17 C.F.R. § 5.1(m) (2014), as any account, agreement, contract, or transaction described in Section 2(c)(2)(B) or 2(c)(2)(C) of the Act. A retail forex transaction does not include an account, agreement, contract or transaction in foreign currency that is a contract of sale of a commodity for future delivery (or

an option thereon) that is executed, traded on or otherwise subject to the rules of a contract market designated pursuant to Section 5(a) of the Act.

## VI.   FACTS

### A.   The Transactions in Forex

25.   The Defendants, through their website, offer to enter into, and enter into, transactions in forex with retail customers who are not ECPs by offering to act as the counterparty to transactions in Vietnamese Dong and/or Iraqi Dinar.  As the sole officer and controlling person of both DCI and Monex NV, Tayeh is responsible for the content of the website both individually, and as the agent of DCI and Monex NV.

26.   Under the caption "Dinar Corp., Inc., Securing Your Future," the Defendants, through their website, offer customers transactions in forex utilizing a variety of financing options, which customers can choose by selecting the "Dinarcorp15," "Dinarcorp 45," "Dinarcorp60+," "Dinarcorp90," or the "Dinarcorp120+Max" options displayed on the website.

27.   Each of the above payment plans are financed by the Defendants, acting as the counterparty, and none of the payment plans offered to customers result in actual delivery of forex within 2 days of the transaction(s).  Instead, retail customers receive their forex, if at all, over periods of not less than fifteen (15) days, and up to one hundred twenty (120) days, following the date of the transaction in forex.

28.   For example, the Defendants' "Dinar Corp 120+ Max" option, as described on the website, offers actual and prospective customers a "five payment program" that "allows clients to lock in their rate for a duration of 120 days and to submit their entire payment within a 120 day period."  The first payment is characterized as a "non-refundable Purchase Payment" of ten percent (10%) of the total transaction amount.  The second payment is due thirty (30) days later,

and the third, fourth and fifth payments are due in subsequent thirty (30) day intervals. The last, and fifth payment, comprises sixty percent (60%) of the purchase price. If customers miss a payment, the entire first payment is forfeited.

29.     Customers are offered a variety of options as to the amount of the transaction in forex they may choose to enter into with the Defendants, each of which carries a significant financing charge included within the transaction. For example, if a customer chooses to enter into a transaction nominally involving one million dinars, the customer would be charged a total of One Thousand Fifty Dollars ($1,050.00). At the current exchange rate of approximately One U.S. dollar ($1.00) for 1,163 Iraqi Dinars, or Eight Hundred Sixty Dollars ($860) for 1 million Iraqi Dinars, the transaction offered by the Defendants includes an undisclosed finance charge of approximately twenty-two percent (22%).

30.     Customers enter into transactions in forex with the Defendants by submitting an online account application through the website.

31.     Once a customer agrees to enter into a transaction in forex with the Defendants, the customer is advised that the Defendants only accept money orders or cashier's checks as payment. Customers are directed to make their funds payable not to DCI, but to "My Monex, Inc."

**B.     The Fraudulent Scheme**

32.     The Defendants solicit transactions in forex by omitting, and misrepresenting, material facts in their solicitations to actual and prospective customers.

33.     The Defendants represent to actual and prospective customers via their website that DCI is a: "Licensed Money Services Business...fully registered and fully compliant." These representations are false. The Defendants are barred from conducting business as a "money

services business" in Texas and Illinois for failing to comply with the relevant laws of those states, and none of the Defendants are registered as required with the Commission.

34.     The Defendants also omit from their communications with prospective and actual customers other material facts. Through the website, the Defendants represent that DCI has the "[B]est Prices Guaranteed...no special codes, no secret discount, just best prices up front all the time." However, Defendants fail to advise customers of material facts regarding the true cost of the transactions offered by the Defendants, including but not limited to, that the transactions include an undisclosed finance charge of up to twenty-two (22%) percent of the overall cost of each transaction.

35.     Through the website, the Defendants further represent to actual and prospective customers that "[DCI] does not offer services to or ship to residents of Illinois or Arkansas." However, nowhere on the website do the Defendants advise actual or prospective customers that the states of Illinois and Texas have issued cease and desist orders against DCI, barring it from conducting business in those states due to DCI's failure to comply with those states' licensing requirements prior to conducting business therein.

36.     The Defendants fail to disclose additional material facts to prospective and actual customers, including but not limited to: that DCI, Monex NV and Monex AL are not registered as RFEDs as required by federal law; b) that Tayeh is not registered as an AP of an RFED(s) as required by federal law; and c) that the Defendants' are conducting an illegal business absent such registrations.

37.     The online account application does not seek any information about prospective customers' net worth or customers' business need for foreign currency.

38.     The online account application does not inquire as to whether a prospective customer is an ECP or about a prospective customer's savings and investments. The online account application does not inquire if a prospective customer has assets in excess of $5 million.

39.     Upon information and belief, few, if any, of the Defendants' retail customers are ECPs. None of the transactions in forex offered by the Defendants involve a security that is not a security futures product.

**C.     Failure to Register with Commission**

40.     Throughout the relevant period, DCI and Monex NV solicit and/or accept orders from customers who are not ECPs to enter into agreements, contracts or transactions in forex, which are financed by the Defendants.

41.     Thus, DCI and Monex NV are each acting as an RFED and continue to do so by soliciting or accepting orders from customers who are not ECPs to engage in agreements, contracts or transactions in forex which are financed by the Defendants.

42.     As of the date of the filing of this Complaint, neither DCI nor Monex NV have registered with the Commission as an RFED, in violation of Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2014).

43.     Throughout the relevant period, Tayeh has been the sole officer of both DCI and Monex NV; therefore, he has been an AP of both DCI and Monex NV because he is a partner, officer or employee, acting in a capacity that involves the solicitation or acceptance of retail forex customers' orders, or the supervision of any person or persons so engaged.

44.     As of the date of the filing of this Complaint, Tayeh has not registered with the Commission as an AP of RFEDs DCI and/or Monex NV, in violation of Regulation 5.3(a)(6)(ii), 17 C.F.R. § 5.3(a)(6)(ii) (2014).

45.     At no time during the relevant period has DCI or Monex NV been exempt from the requirement to register as an RFED.

46.     At no time during the relevant period has Tayeh been exempt from the requirement to register as an AP of an RFED.

### D.     Relief Defendants Received Funds To Which They Have No Legitimate Claim

47.     Throughout the relevant period, Defendants have worked with Hudson, and caused Hudson to create and operate Monex AL, for the purpose of negotiating cashier's checks and money orders made payable by customers to "My Monex, Inc.," in bank accounts opened by Hudson in the name of Monex AL, at various banks within this District, with Hudson as a signatory on each account.

48.     However, all of these cashier's checks and money order were made payable to Monex NV, not Monex AL.  Therefore, as the sole officer of Monex AL, Hudson knew at the time of each such deposit that none of these cashier's checks and money orders should have been deposited into the bank accounts in the name of Monex AL, and that neither Hudson nor Monex AL had a legitimate claim to the customers' funds.

49.     Defendants have sent millions of dollars of customer's cashier's checks and/or money orders to Hudson at his home in Dothan, Alabama.

50.     After Hudson deposits customers' cashier's checks and money orders made payable to Monex NV into bank accounts carried in the name of Monex AL, Hudson then remits customer funds back to Tayeh and entities he created and/or controls, less five percent (5%) retained by Hudson and Monex AL as a purported "processing fee."

51.     Upon information and belief, Hudson and Monex AL have no legitimate claim to the customer funds they hold, or the "processing fees" they have collected, all of which were obtained as a result of the Defendants' fraudulent conduct.

## VII.   VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT ONE:
### VIOLATION OF 7 U.S.C. § 6b(a)(2)(A), (C) and 17 C.F.R. § 5.2(b)(1), (3): FRAUD

52.     The allegations set forth in paragraphs 1 through 51 are re-alleged and incorporated herein by reference.

53.     Section 4b(a)(2)(A) and (C) of the Act 7 U.S.C. § 6b(a)(2)(A), (C) (2012), make it unlawful:

> (2)     for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or a swap, that is made, or to be made, for or on behalf of, or with, any other person; other than on or subject to the rules of a designated contract market– (A) to cheat or defraud or attempt to cheat or defraud the other person;...or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for the other person.

54.     Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3) (2014), makes it unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction:  (1) to cheat or defraud or attempt to cheat or defraud any person; or (3) willfully to deceive or attempt to deceive any person by any means whatsoever.

55.     As described herein, Defendants violated Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A), (C) (2012), and Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3) (2014), by their material false statements and omissions to prospective and existing customers.

56.     Defendants engaged in the acts and practices described above in connection with contracts of sale "as if" they were commodities for futures delivery made other than on or subject to the rules of a designated contact market.

57.     Defendants engaged in the acts and practices described herein willfully, knowingly, or with reckless disregard for the truth.

58.     By the conduct alleged herein, during the relevant period, the Defendants cheated or defrauded or attempted to cheat or defraud other persons and willfully deceived or attempted to deceive other persons in connection with any order to make, or the making of, any contract of sale of any commodity for futures delivery by fraudulently soliciting prospective and existing customers, including, but not limited to, omitting and misrepresenting material facts in their solicitations to actual and prospective customers in violation of Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A), (C) (2012) and Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3) (2014).

59.     The Defendants engaged in the acts and practices described above knowingly or with reckless disregard for the truth of the fraudulent acts, representations and/or omissions.

60.     During the relevant time period, Tayeh was acting as the agent of DCI and/or Monex NV.  Therefore, DCI and/or Monex NV are liable for Tayeh's violations of Section 4b(a)(2)(A) and (C) of the Act, § 6b(a)(2)(A), (C) (2012), and Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3) (2014), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2014).

61.     Tayeh directly or indirectly controlled DCI and Monex NV, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting their violations of Section 4b(a)(2)(A) and (C) of the Act, § 6b(a)(2)(A), (C) (2012) and Regulation 5.2(b)(1) and

(3), 17 C.F.R. § 5.2(b)(1), (3) (2014).  Tayeh is therefore liable for the violations of DCI and Monex NV pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

62.    During the relevant period, each act of fraudulent act, misrepresentation and/or omission of material fact, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation by the Defendants of Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A), (C) (2012) and Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3) (2014).

## COUNT TWO:
## VIOLATION OF 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) REGULATION 5.3(a)(6)(i): FAILURE TO REGISTER AS RFED

63.    Paragraphs 1 through 62 are realleged and incorporated herein.

64.    During the relevant period, DCI solicited or accepted agreements, contracts or transactions in forex from non-ECPs in connection with leveraged, margined or financed agreements, contracts or transactions in forex as the counterparty to each agreement, contract or transaction in forex.  DCI has, and is, engaging in this conduct without being registered as an RFED, in violation of Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2014) and Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012).

65.    Tayeh directly or indirectly controlled DCI, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting its violations of Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2014) and Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012).  Tayeh is therefore liable for the violations of DCI pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

66.    Each day that DCI has engaged in this conduct during the relevant period is alleged as a separate and distinct violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as

amended, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012) and Regulation 5.3(a)(6)(i), 17 C.F.R.

§ 5.3(a)(6)(i) (2014).

## COUNT THREE:
## VIOLATION OF 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) AND REGULATION 5.3(a)(6)(i):
## FAILURE TO REGISTER AS RFED

67.     Paragraphs 1 through 66 are realleged and incorporated herein.

68.     During the relevant period, Monex NV solicited or accepted agreements, contracts

or transactions in forex from non-ECPs in connection with leveraged, margined or financed

agreements, contracts or transactions in forex as the counterparty to each agreement, contract or

transaction. Monex NV has and is engaging in this conduct without being registered as an

RFED, in violation of Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2014) and Section

2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012).

69.     Tayeh directly or indirectly controlled Monex NV, and did not act in good faith or

knowingly induced, directly or indirectly, the acts constituting its violations of Regulation

5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2014) and Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as

amended, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012). Tayeh is therefore liable for the violations of

Monex NV pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

70.     Each day that Monex NV has engaged in this conduct during the relevant period

is alleged as a separate and distinct violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as

amended, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012) and Regulation 5.3(a)(6)(i), 17 C.F.R.

§ 5.3(a)(6)(i) (2014).

## COUNT FOUR:
## VIOLATION OF SECTION 2(c)(2)(C)(iii)(I)(aa) OF THE ACT, AS AMENDED
## AND REGULATION 5.3(a)(6)(ii):
## FAILURE TO REGISTER AS AP OF RFED

71.     Paragraphs 1 through 70 are realleged and incorporated herein.

72.     During the relevant period, Tayeh was associated with RFEDs DCI and Monex NV as a partner, officer or employee, in a capacity that involved: (i) the solicitation or acceptance of retail forex customers' orders; or (ii) the supervision of any person or persons so engaged.

73.     Tayeh has and is engaging in this conduct without being registered as an AP of RFEDs DCI and/or Monex NV, in violation of Regulation 5.3(a)(6)(ii), 17 C.F.R. § 5.3(a)(6)(ii) (2014) and Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012).

74.     During the relevant time period, Tayeh was acting as the agent of DCI and Monex NV. Therefore, DCI and Monex NV are liable for Tayeh's violations of Regulation 5.3(a)(6)(ii), 17 C.F.R. § 5.3(a)(6)(ii) (2014) and Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2014).

75.     Each day that Tayeh failed to register as an AP of an RFED during the relevant period is alleged as a separate and distinct violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012) and Regulation 5.3(a)(6)(ii), 17 C.F.R. § 5.3(a)(6)(ii) (2014).

### COUNT FIVE:
### DISGORGEMENT OF FUNDS FROM THE RELIEF DEFENDANTS

76.     The allegations set forth in paragraphs 1 through 75 are re-alleged and incorporated herein.

77.     Defendants have engaged in a fraudulent investment scheme that defrauded Defendants' customers.

78.   Hudson and Monex AL have received funds that were obtained as a result of Defendants' fraudulent conduct.

79.   Hudson and Monex AL have no legitimate entitlement to, or interest in, the funds received from Defendants' fraudulent conduct.

80.   Hudson and Monex AL should be required to disgorge the funds they received from Defendants' fraudulent conduct, or the value of those funds that Hudson and/or Monex AL may have subsequently transferred to third parties.

81.   By reason of the foregoing, Hudson and Monex AL hold funds in constructive trust for the benefit of customers who were victimized by Defendants' fraudulent scheme.

## VII.   RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

A.   An order finding that Defendants violated Section 4b(a)(2)(A) and (C) of the Act 7 U.S.C. § 6b(a)(2)(A) and (C) (2012) and Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3) (2014); Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012) and Regulation 5.3(a)(6)(i) and (ii), 17 C.F.R. § 5.3(a)(6)(i), (ii) (2014);

B.   An order of permanent injunction prohibiting Defendants, and any other person or entity associated with them, or acting in concert with them, from engaging in conduct in violation of Section 4b(a)(2)(A) and (C) of the Act 7 U.S.C. § 6b(a)(2)(A) and (C) (2012) and Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3) (2014); Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012) and Regulation 5.3(a)(6)(i) and (ii), 17 C.F.R. § 5.3(a)(6)(i), (ii) (2014);

C.      An order requiring Relief Defendants Hudson and Monex AL, as well as any

of their successors or assigns, to disgorge to any officer appointed or directed by the Court, all

ill-gotten gains and other benefits received from Defendants, including, but not limited to,

salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly,

from the Defendants as a result of Defendants' acts or practices that constitute violations of the

Act, as amended, and the Regulations, including pre and post-judgment interest;

D.      An order of permanent injunction prohibiting Defendants and any successor

thereof, from, directly or indirectly:

a.      Trading on or subject to the rules of any registered entity (as that term is defined

in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

b.      Entering into any transactions involving "commodity interests" (as that term is

defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2014) for their own personal account

or for any account in which they have a direct or indirect interest;

c.      Having any commodity interests traded on their behalf;

d.      Controlling or directing the trading for or on behalf of any other person or entity,

whether by power of attorney or otherwise, in any account involving commodity

interests;

e.      Soliciting, receiving or accepting any funds from any person for the purpose of

purchasing or selling any commodity interests;

f.      Applying for registration or claiming exemption from registration with the

Commission in any capacity, and engaging in any activity requiring such registration or

exemption from registration with the Commission, except as provided for in Regulation

4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014); and/or

g.    Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R.

§ 3.1(a) (2014)), agent or any other officer or employee of any person (as that term is

defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)), registered, exempted

from registration or required to be registered with the Commission except as provided for

in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014).

E.    Enter an order requiring that Defendants, as well as any of their successors,

disgorge to any officer appointed or directed by the Court all benefits received including, but not

limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or

indirectly, from acts or practices that constitute violations of the Act, as amended, and the

Regulations, including pre and post-judgment interest;

F.    Enter an order directing Defendants and any successors thereof, to rescind,

pursuant to such procedures as the Court may order, all contracts and agreements, whether

implied or express, entered into between them and any of the customers whose funds were

received by them as a result of the acts and practices, which constituted violations of the Act, as

amended, and the Regulations as described herein;

G.    Enter an order requiring Defendants to pay civil monetary penalties under the Act,

to be assessed by the Court, in amounts of not more than the greater of: (1) triple the monetary

gain for each violation of the Act, as amended, and the Regulations or (2) $140,000 for each

violation committed on or after October 23, 2008;

H.    Enter an order requiring Defendants to pay costs and fees as permitted by

28 U.S.C. §§ 1920 and 2412(a)(2) (2006); and

I.      Enter an order providing such other and further relief as this Court may deem

necessary and appropriate under the circumstances.


Dated: July 27, 2015                          Respectfully submitted,

                                              U.S. COMMODITY FUTURES TRADING
                                              COMMISSION
                                              /s/ Timothy J. Mulreany
                                              Timothy J. Mulreany
                                              Chief Trial Attorney
                                              Maryland Fed. Bar No.: 08262
                                              tmulreany@cftc.gov
                                              Attorney for Plaintiff
                                              U.S. Commodity Futures Trading Commission
                                              1155 21st Street, N.W.
                                              Washington, DC
                                              (202) 418-5306
                                              (202) 418-5538